28 C.C.P A.(Patents)

## PUERTO RICO DISTILLING CO. v. COCA–COLA CO.

### Patent Appeal No. 4471.

Court of Customs and Patent Appeals.

June 9, 1941.

Rehearing Denied July 3, 1941.

LENROOT and HATFIELD, JJ., dissenting.

———————

Ivan P. Tashof, of Washington. D. C., (S. Pierre Robineau and Garland M. Budd, Jr., both of Miami, Fla., of counsel), for appellant.

Spalding, Sibley, Troutman & Brock and Frank Troutman, all of Atlanta, Ga., and Edward S. Rogers, of Chicago, Ill., for appellee.

Before GARRETT, Presiding Judge, and BLAND, HATFIELD, LENROOT, and JACKSON, Associate Judges.

GARRETT, Presiding Judge.

This is an appeal from the decision of the Commissioner of Patents reversing that of the Examiner of Interferences in a trade-mark opposition proceeding instituted in the United States Patent Office by appellee, Coca-Cola Company, against an application filed by appellant, Puerto Rico Distilling Company, for the registration of the notation "Ronricola" as a trade-mark for rum, alcoholic cocktails, and beverages containing substantial portions of rum.

The appellant is a corporation duly organized under the laws of the territory of

Puerto Rico, and for many years has been engaged in the manufacture of a rum which is sold under the trade name or brand of "Ronrico." In 1937 it began the manufacture of a drink, referred to as "Cuba Libre," composed of Ronrico rum, cola syrup, and lime juice, the rum being the principal ingredient, and on June 16, 1937, filed the application for registration of "Ronricola" as a trade-mark for such mixed drink, alleging use "since April 15, 1937." The application having been passed for publication and published, appellee filed notice of opposition, pleading the use and registration of the well known mark "Coca-Cola" on its syrup product, used in making soft drinks long prior to the date of appellant's application, and alleging, in substance, that the goods are of the same descriptive properties; that the respective marks are of such close resemblance that the use of "Ronricola" by appellant would be likely to cause confusion or mistake in the mind of the public or to deceive purchasers, and that appellee would be injured by its registration. Appellant made answer to the notice of opposition and so the issue was joined.

Testimony was taken on behalf of both parties which it is unnecessary to review in detail.

The Examiner of Interferences dismissed the notice of opposition and held that appellant was entitled to the registration sought. In so doing, he did not hold the goods of the respective parties to be of different descriptive properties, but said, inter alia:

"The record shows that the beverage sold by the applicant is a mixture of rum and cola syrup and that in this beverage the rum is the dominant part thereof and the cola syrup a minor part. Cola syrup is the generic name of an article of trade and is commonly used in the making of beverages. Its significance to purchasers as a feature of a composite mark used on a beverage of which it is also an ingredient is deemed not to be fanciful or arbitrary.

\* \* \* \* \*

"The goods of the opposer are in the nature of a soft drink and are so regarded by the general public. Their trade appeal is obviously quite different. It is thus apparent that the differences in the marks and the properties of the goods are considerable and it is believed that in view of the cumulative effect thereof concurrent use of these marks in trade on these goods would not be likely to confuse the public or to deceive purchasers. \* \* \*"

In reversing the decision of the Examiner of Interferences and sustaining the opposition, the commissioner held that the goods of the respective parties "do in fact possess the same descriptive properties within the meaning of the Trade-Mark Act."

In connection with his holding on this phase of the case, the commissioner cited certain prior decisions made by him. The first decision so cited was that in the case of California Packing Corporation, Applicant v. Silver Swan Liquor Corporation, Opposer, 477 Off.Gaz. 770, 32 U.S.P.Q. 581. The applicant there applied for registration of "Gold Band" for use on whisky. The opposer pleaded, among other things, a registration of the same mark owned by it for ginger ale. The commissioner, seemingly basing his view largely upon certain reasoning of this court in the case of Meredith Publishing Co. v. O. M. Scott & Sons Co., 88 F.2d 324, 24 C.C.P.A., Patents, 956, held "that whisky and ginger ale are merchandise of the same descriptive properties," saying, that "they are frequently mixed together and imbibed from the same glass"; that "they are closely associated in the mind of the drinking public," and that "confusion may well result from their sale under *identical* marks." (Italics ours.) The second case cited was that of White Rock Mineral Springs Company v. Neurad, 477 Off.Gaz. 770, 33 U.S.P.Q. 163, in which the commissioner held, in effect, that carbonated water possessed the same descriptive properties as distilled alcoholic liquors, including whisky, for which latter Neurad was seeking registration of the term "White Rock," a term which the appellant there had had registered either alone or in combination with other features prior to Neurad's filing date "for mineral water, ginger ale and other carbonated beverages." The third case cited was that of Continental Distilling Corporation, Opposer v. Buston, Applicant, 500 Off.Gaz. 772, 40 U.S.P.Q. 566, wherein the commissioner held, in effect, that gin and cola beverages of the soft drink type were of the same descriptive properties and that confusion would likely result from the registration of "Dixie Bell," the mark used by opposer for gin, for use on such soft drink beverages.

It will be observed that in two of the cases the applicant sought registration for use on a per se nonalcoholic beverage of a mark *identical* with one previously registered for use on alcoholic beverages and in the other case the applicant sought registration for use on an alcoholic beverage of a mark *identical* with one previously registered for a nonalcoholic beverage. No one of those cases was appealed but we may say that it is our present view that had we been called upon to review them, we would have felt constrained, under the facts there appearing, to agree with the commissioner's denials of the registrations.

In the case of American Brewing Company, Inc. v. Delatour Beverage Corporation, 100 F.2d 253, 255, 26 C.C.P.A., Patents, 778, which was a cancellation proceeding, the goods consisted of ginger ale on the one hand and beer and ale on the other, and we concurred in the view of the commissioner that these "are of the same descriptive properties." The appellant there sought cancellation of a registration by the appellee, for use on ginger ale, of a mark consisting "of a representation of the Statue of Liberty and the printed words 'America Dry Ginger Ale,'" the printed words being disclaimed. The mark of appellee, used on beer and ale, consisted of a composite mark comprising a representation of the Statue of Liberty and the word "Liberty."

The commissioner took the view that while the goods were of the same descriptive properties within the meaning of the Trade-Mark Act, 15 U.S.C.A. § 81 et seq., they nevertheless were specifically different and held that regardless of the presence of the representation of the Statue of Liberty in both marks there was no reasonable likelihood of confusion between them as applied to the goods involved.

In the course of our decision reversing that of the commissioner, we said, inter alia: "If the disclaimed words, 'America Dry Ginger Ale,' in registrant's mark should be given the same prominence and weight as the representation of the Statue of Liberty therein, we could agree with the commissioner that, considering the difference in goods and the differences in the marks, there is no reasonable likelihood of confusion arising from the use of the respective marks; but we are of the opinion that disclaimed descriptive words in a mark should not be given the same promi-

nence as that portion of the mark which possesses all of the qualities of a valid technical trade-mark. It is true that the general rule is that marks should be regarded in their entirety, including disclaimed words, but we do not think it could well be argued that disclaimed descriptive words could ever constitute the dominant part of a mark."

After citing certain authorities, we found that "the essential and dominant feature of the mark sought to be cancelled is the pictorial representation of the Statue of Liberty," and upon that basis held, in effect, that confusion would likely result from the use of the mark on ginger ale. The intimation of the opinion clearly is to the effect that had the marks not been, as respected the dominant feature of appellee's mark, substantially identical, our decision might have been different "considering the difference in goods and the differences in the marks."

■ Under the authorities above cited, we feel constrained to agree with the view of the commissioner that the respective goods of appellant and appellee in the instant case "possess the same descriptive properties within the meaning of the Trade-Mark Act," but it is also true, as was said by the commissioner of the goods involved in the American Brewing Co. case, supra, "they are nevertheless specifically different," and it is, of course, well settled that specific differences in goods which are of the same general descriptive character should be considered in connection with differences in marks in fairly determining the question of likelihood of confusion. Vick Chemical Co. v. Central City Chemical Co., 75 F.2d 517, 22 C.C.P.A., Patents, 996; Joseph Tetley & Co., Inc. v. Fant Milling Co., etc., 111 F.2d 485, 27 C.C.P.A., Patents, 1180.

In the instant case the commissioner first considered the question relating to the descriptive properties of the respective goods, and then considered the matter of similarity of the marks. It was his conclusion that the statement of the Examiner of Interferences, quoted supra, was in conflict with views expressed by this court in the case of Corn Products Refining Co. v. Coca-Cola Company, 103 F.2d 385, 386, 26 C.C.P.A., Patents, 1181.

In that case we held "Dextra-Cola," "Cola" being disclaimed applied to a nonalcoholic, maltless syrup for making soft

drinks, to be confusingly similar to "Coca-Cola" (citing our decision in the case of Steinreich v. Coca Cola Co., 67 F.2d 498, 21 C.C.P.A., Patents, 722, where "Vera-Coca" for use upon a noncereal, nonalcoholic, maltless beverage, sold as a soft drink, was held to be confusingly similar with "Coca-Cola"), saying, inter alia:

"Appellant insists that the word 'Cola' is descriptive as used in the marks of the respective parties, and points to the fact that it has disclaimed the exclusive use of the word 'Cola' apart from the mark as shown in the drawing.

"Upon this point we would observe that if the word 'Cola' in appellee's registered mark is descriptive, so is the word 'Coca,' and the effect of appellant's contention is to challenge the validity of appellee's registrations upon which it relies. That this may not be done in an opposition proceeding is well established. * * *"

As to the foregoing, it may be said that in the instant case there has been no disclaimer as to any part of appellant's mark, "Ronricola," nor has it been suggested that it is descriptive of the goods for use upon which the registration is sought; neither has there been any challenge of the validity of appellee's mark (which, incidentally, was upheld by the Supreme Court of the United States in the case of Coca-Cola Co. v. Koke Co., 254 U.S. 143, 41 S.Ct. 113, 65 L.Ed. 189), and whatever may have been the view which the Examiner of Interferences intended to state (his decision was prior to our decision in the Corn Products Refining Co. case, supra), we think there is no conflict between our conclusion here reached and that which was reached in the latter case.

The commissioner also cited our decision in the case of King Kola Mfg. Co. v. Coca Cola Co., 99 F.2d 983, 26 C.C.P.A., Patents, 704, where the notation "King Kola" applied on a syrup and a nonalcoholic beverage containing such syrup was held to be confusingly similar to "Coca-Cola."

It will be observed that in each of the last three cases cited the syrup and drinks of the respective parties contesting with the Coca-Cola Company were nonalcoholic in character and were seemingly directly competitive with Coca-Cola. It can hardly be said that the product of appellant here is competitive with Coca-Cola. The "Cola" element of appellant's "Ronricola" may be larger in volume, but unquestionably

the product is purchased primarily because of its alcoholic content. When the marks are compared, each as a whole, they do not impress us as being similar in suggestiveness, appearance, or sound.

The notation "Ronricola" was obtained by adding "La" to appellant's brand mark "Ronrico." We take it that the notation is suggestive of a mixed drink containing rum (Spanish "Ron") and cola syrup or extract, but to our minds it does not even suggest a product such as Coca-Cola is well known to be. That appellant had knowledge of appellee's mark at the time it adopted its mark is obvious and is conceded, but under the facts here appearing we find no reason to draw any inference adverse to appellee from that circumstance.

Coca-Cola, by reason of its long and widely extended use, has come to have an almost universally understood meaning. In the case of Coca-Cola Co. v. Koke Co., supra [254 U.S. 143, 41 S.Ct. 114, 65 L.Ed. 189], the court said: "It [Coca-Cola] means a single thing coming from a single source, and well known to the community. It hardly would be too much to say that the drink characterizes the name as much as the name the drink."

"Ronricola," on the other hand, appears to be a comparatively new product and presumably is not widely known, but to those who purchase it, its characteristics undoubtedly are known and they will become known to those who become purchasers of it in the future, and it is inconceivable to us that it is or ever will be purchased by any one who wants nothing other than the soft drink universally known as Coca-Cola, or that there is likelihood of confusion either as to the characteristics or origin of the respective goods, or as to the origin of the ingredients composing appellant's product.

█ The Coca-Cola company, of course, has no monopoly upon the production of cola syrup or cola extract, or whatever that particular element which enters into its Coca-Cola product may be. Cola syrup or extract, as is well known, is derived from a product of nature, a species of nut or bean, and is open to the world to produce. We are unable to conclude that by reason of appellee's mark it can prevent another producer of such syrup or extract from describing his product by use of the word "Cola" so long as the word is used in a manner which does not impinge upon

appellee's mark. The record here discloses that in the beginning appellant used a label on which it was stated that Coca-Cola was an ingredient of Ronricola, but the use of such label, apparently having been objected to by appellee, was discontinued, and it appears that any cola product may be used.

Appellee urges that there is grave danger of confusion as to origin, that is, that purchasers may conclude that Ronricola is the product of appellee. We are unable to discern any sound reason for such apprehension, in view of the distinctive differences between the goods and the marks, and in view of the widely known character of appellee's product and business. It has not been suggested that appellee has any purpose or desire of expanding its business so as to include a product similar to that of appellant, nor is there anything in this record to indicate that appellant proposes to produce a product having the actual per se characteristics of Coca-Cola, as was the case in the instances of the "Vera-Cola," "Dextra-Cola," and "King Kola" marks above recited.

Appellee also has stressed vigorously the contention that it would be damaged by confusion resulting from the purchasing public concluding that the "cola" which enters the "Ronricola" drink originated with the Coca-Cola company. We are of the opinion that there is no more likelihood of confusion arising by reason of the last stated consideration than there would be by reason of the first.

 While we recognize the validity of appellee's mark and its right to protection thereof, we must also, when a case comes before us for adjudication, recognize that all who are engaged in interstate commerce have rights under the Trade-Mark Registration Act and be governed accordingly in our decisions. So, here, in view of the differences between the goods and the marks, we feel constrained to hold that the registration sought should be allowed.

It is understood by us that a requirement made by the commissioner for the deletion of the word "rum" where it first appears in appellant's application, "If upon further appeal it be adjudged that applicant is entitled to the registration applied for," has been or will be acquiesced in by appellant. We think its deletion proper, and approve the commissioner's holding in that respect.

For the reasons stated, the decision of the commissioner sustaining the opposition and denying appellant's right of registration is reversed.

Reversed.

LENROOT, Associate Judge (dissenting).

I respectfully dissent from the conclusion reached by the majority and the reasoning upon which such conclusion is based.

In my opinion there is likelihood of confusion of origin in the use of the mark "Ronricola" by appellant upon its goods, in that purchasers of the same may conclude that Ronricola is the product of appellee.

Upon this point the majority opinion states: " * * * We are unable to discern any sound reason for such apprehension, in view of the distinctive differences between the goods and the marks, and in view of the widely known character of appellee's product and business. It has not been suggested that appellee has any purpose or desire of expanding its business so as to include a product similar to that of appellant, nor is there anything in this record to indicate that appellant proposes to produce a product having the actual per se characteristics of Coca-Cola, as was the case in the instances of the 'Vera-Cola,' 'Dextra-Cola,' and 'King Kola' marks above recited."

I do not understand the relevancy of the above-quoted observations. It is not a question of whether appellee may expand its business by making a beverage identical with that made by appellant. The test is, would purchasers of the beverage Ronricola be likely to assume that appellee had expanded its business and that the product Ronricola was being made and sold by appellee. Whether appellee ever makes such a beverage is wholly immaterial.

As was said in the case of Elgin American Mfg. Co. v. Elizabeth Arden, Inc., 83 F.2d 687, 688, 23 C.C.P.A., Patents, 1168: " * * * The real question confronting us is whether the goods of the respective parties are so related, commercially or otherwise, that, when marketed under the involved trade-marks, the purchasing public might reasonably conclude that they originated with the same concern."

That such confusion of origin is likely in the case at bar is, in my judgment,

plainly evident by the facts of record in this case.

One of the registrations of the mark "Coca-Cola" relied upon by appellee is No. 47,189, dated October 31, 1905, which registration was issued under the ten-year clause of section 5 of the Act of February 20, 1905, 15 U.S.C.A. § 85. In other words, the term "Coca-Cola" had acquired a secondary meaning which, under the express provisions of said section 5, entitled it to registration. The provision reads as follows: " * * * And provided further, That nothing herein shall prevent the registration of any mark used by the applicant or his predecessors, or by those from whom title to the mark is derived, in commerce with foreign nations or among the several States or with Indian tribes which was in actual and exclusive use as a trade-mark of the applicant, or his predecessors from whom he derived title, for ten years next preceding February 20, 1905: * * *."

The effect of this registration made it wholly immaterial that "Coca" may be descriptive of a product made from coca leaves, or that "Cola" may be descriptive of a product of the cola nut.

In the case of Thaddeus Davids Co. v. Davids Co., 233 U.S. 461, 470, 34 S.Ct. 648, 652, 58 L.Ed. 1046, Ann.Cas.1915B, 322, the court, in discussing the ten-year clause of said section 5, stated: " * * * Their exclusive use as trademarks for the stated period was deemed, in the judgment of Congress, a sufficient assurance that they had acquired a secondary meaning as the designation of the origin or ownership of the merchandise to which they were affixed. And it was manifestly in this limited character only that they received statutory recognition, and, on registration, became entitled to protection under the act."

In view of the foregoing it seems plain that appellant had no right to appropriate one-half of appellee's mark and use the same as a portion of its mark if, regarding the word "Cola" as *not descriptive,* there would be likelihood of confusion arising from such use. In other words, appellant had no right, in view of appellee's registration, to use the word "Cola" as a part of a mark for the purpose of indicating origin of its goods.

In the case of Saxlehner v. Eisner & Mendelson Company, 179 U.S. 19, 33, 21 S.Ct. 7, 12, 45 L.Ed. 60, the court said: " * * * It is not necessary to constitute an infringement that every word of a trademark should be appropriated. It is sufficient that enough be taken to deceive the public in the purchase of a protected article. * * *"

The majority opinion states: "It will be observed that in each of the last three cases cited the syrup and drinks of the respective parties contesting with the Coca-Cola Company were nonalcoholic in character and were seemingly directly competitive with Coca-Cola. It can hardly be said that the product of appellant here is competitive with Coca-Cola. The 'Cola' element of appellant's 'Ronricola' may be larger in volume, but unquestionably the product is purchased primarily because of its alcoholic content. When the marks are compared, each as a whole, they do not impress us as being similar in suggestiveness, appearance, or sound."

In the case of Elgin American Mfg. Co. v. Elizabeth Arden, Inc., supra, the goods involved were in no sense competitive, the goods of appellant being soap receptacles, etc., and the goods of appellee being soap. We reversed the decision of the Commissioner of Patents and held that appellee's mark should not be registered because of likelihood of confusion in origin.

In the case at bar it is established that appellant's beverage and appellee's beverage are sold over the same counters to the same purchasers, and that they are frequently used together in making mixed drinks. The fact that appellee's beverage is also sold in places where appellant's beverage is not sold is immaterial.

It appears that the bottles of appellant's goods first sold in interstate commerce, which sale is relied upon by appellant to qualify it to register its mark, contained, in addition to the mark "Ronricola," the following:

A Bottled
Cuba Libre
Made With Genuine
Ronrico Rum and Coca Cola
Contains 33⅓% By Volume Of
Ronrico Rum
At 86 Proof
One Quart—14.5% Alcohol by Vol.

Made and Bottled by Puerto Rico Distilling Co. At Arecibo, P. R.

It also appears that negotiations were carried on by appellant with the view of

securing the cooperation of the Coca-Cola Company in assisting the Ronrico Corporation, the selling agent of appellant, to obtain Coca-Cola syrup for the mixture with Ronrico rum and lime. This cooperation was rejected by appellee. In a letter from the sales manager of the Ronrico Corporation to the attorneys for appellee it is stated: "Please be advised that as a result of our meeting with you, in Atlanta, several months ago, wherein we discussed the possibility of the use of the facsimile of your bottle as well as your trade mark, in connection with the promotion of the drink known as "Cuba Libre", we discontinued the use of the Coca Cola bottle and any mention thereto, in connection with our promotional material."

It is well settled that the circumstances under which appellant adopted its mark may properly be considered in determining the question of confusing similarity. Corn Products Refining Co. v. Coca-Cola Company, 103 F.2d 385, 26 C.C.P.A., Patents, 1181, and cases therein cited.

It is clear to me that appellant had the trade-mark of appellee in mind when it selected its mark, and that it deliberately selected the term "Cola" with the hope of profiting by the good-will of appellee and its extensive advertising, amounting to more than $85,000,000.

It is appellant's position before us, as stated in its brief, that:

" * * * The proofs show, beyond a doubt, that each mark denoted origin of the goods of the respective parties, and by no stretch of the imagination could it be successfully concluded that Ronricola would even remotely suggest that the applicant's Cuba Libre was 'either manufactured' by opposer or 'in some manner sponsored by opposer,' as contended by the Commissioner. * * * *"

And yet in the letter from the Ronrico Corporation to appellee's attorneys we find the following:

* * * * *

"Attached, please find a tear sheet from the October Issue of the 'Hotel Industry'. You will note an interesting article in connection with the first Fall meeting of the I.B.A., which meeting was addressed by a well-known wine and liquor authority, Mr. G. Selmer Fougner.

"This article leaves no doubt that the Carioca Rum Company is very closely associated with the Coca Cola Company in the promotion of a drink known as the Carioca Cooler. The presence of Mr. Homer Thompson of the New York Coca-Cola Bottling Company, at this meeting, is further indicative of the association.

"Naturally, the writer is at quite a loss to understand your statement to him at the time of our meeting several months ago, at which you stated definitely that the Coca-Cola Company had no association whatsoever with the Carioca Rum Company and, as a matter of fact, had secured an injunction against these people for the use of the Coca-Cola name and facsimile of the bottle in their advertising."

Appellee's attorneys, in replying to said letter, denied the association with the Carioca Rum Co. referred to in the letter, but attention is called to it here for the reason that, if appellant's selling agent believed that appellee was interested in a beverage containing rum, it is altogether likely that purchasers of appellant's goods bearing the mark "Ronricola" might believe that appellee was also interested in a beverage containing rum and Coca-Cola, and thus ascribe origin of appellant's product to appellee.

Because I believe that the mark "Ronricola", used upon appellant's goods, would, by reason of the inclusion of the word "Cola" therein, lead purchasers of such goods to believe that their origin was in appellee, it is my judgment that the decision appealed from should be affirmed.

I am authorized to say that Judge HATFIELD concurs in this dissent.