31 C.C.P.A.(Patents)

ROGERS PEET CO. v. B. F. GOODRICH CO.
Patent Appeal No. 4882.

Court of Customs and Patent Appeals.
June 19, 1944.

Semmes, Keegin, Beale & Semmes, S. Warwick Keegin, and Lee M. Robinson, all of Washington, D. C. (Ezra P. Prentice, of New York City, of counsel), for appellant.

Willis F. Avery, of Akron, Ohio (Loyd H. Sutton, of Washington, D. C., of counsel), for appellee.

Before BLAND, Acting Presiding Judge, and HATFIELD, LENROOT, and JACKSON, Associate Judges.

HATFIELD, Associate Judge.

This is an appeal in a trade-mark opposition proceeding from the decision of the Commissioner of Patents reversing the decision of the Examiner of Interferences holding that the marks of the parties are confusingly similar and sustaining appellant's notice of opposition.

Appellee's trade-mark consists of the word "Koromist."

It appears from appellee's application for registration, No. 427,938, filed January 27, 1940, that appellee had used its mark on "plain, colored, and/or printed fabrics impregnated and/or coated with a synthetic composition having rubber like characteristics" since December 29, 1939.

It appears from the record that appellant is the owner of the following trade-mark registrations: No. 95,149, issued February 3, 1914, for the words "Scotch Mist proofed," the word "proofed" being disclaimed apart from the mark as shown, for use on outer suits and overcoats; No. 121,006, issued March 19, 1918, for the words "Scotch Mist," for use on hats and caps; No. 342,520, issued January 19, 1937, for the words "Highland Mist," for use on suits, coats, vests, pants, overcoats, and topcoats for men, which mark, according to the record, was purchased by appellant from S. Makransky & Sons along with the goods and good will of that company; and No. 358,782, issued July 26, 1938, for a composite trade-mark, the dominant feature of which is the word "Mist, for use on men's and boy's suits, overcoats, hats, leather, rubber and fabric shoes, raincoats, negligee and sport shirts, collars, neckties, and hosiery.

Considerable evidence was introduced by appellant which, briefly stated, establishes that appellant and its predecessor have been in business since 1874. It appears from the evidence that during that entire period appellant and its predecessor have

been engaged in the wholesale and retail trade; that appellant manufactures and sells expensive and high quality ready-made wearing apparel for men, young men, and boys; that it is the largest manufacturer of this type of clothing in the United States; that long prior to any date that can be awarded to appellee, appellant manufactured and sold waterproof overcoats under its various trade-marks; that its overcoats are frequently called for by the name "Mist" by both men and women; that it has four retail stores in New York City and one in Boston; that it has a so-called "mail order department"; that its overcoats and other goods are sold throughout the United States under its trade-marks; that its trade-mark "Mist" has been used on both light- and heavy-weight overcoats; that the first shipment of a coat bearing the trade-mark "Mist" was on April 23, 1937; that appellant has expended large sums of money, the exact amount does not appear of record, in advertising its goods through such mediums as window-display cards, newspapers in New York City, Boston, and New Jersey, suburban daily and weekly papers, the Christian Science Monitor, and magazines, such as Fortune, American Hebrew, Jewish Opinion, the National Jewish Monthly, Promenade, Town and Country, Esquire, New Yorker, and the Saturday Evening Post.

It is apparent from the record that appellant's so-called "Mist trade-marks" have become popularized throughout the greater portion of the United States, and that many purchasers refer to appellant's overcoats merely as "Mist" overcoats.

Appellee submitted in evidence a stipulation entered into by counsel for the parties on December 9, 1940, wherein it is stated that appellee's material is "adapted for sale and use as waterproof material in the manufacture in general of articles for which waterproof material of this type is suitable; that it is the intention of the applicant [appellee] to sell this material to the wholesale trade to be made up into articles for which the purchasers may wish to employ the material, including such articles as shower curtains, *waterproof clothing and raincoats.*" (Italics ours.) Appellee also submitted in evidence prior registrations issued to third persons all of which, although prior to appellant's registration of the trade-mark "Mist," were subsequent to the other of appellant's registrations hereinbefore referred to.

In his decision, sustaining appellant's notice of opposition and holding that appellee was not entitled to the registration of its mark, the Examiner of Interferences stated, among other things, that the goods of the parties possess the same descriptive properties, and that appellant's mark "Mist" and appellee's mark "Koromist" are confusingly similar.

The examiner held that the prior registrations to which attention had been called by appellee would not warrant a conclusion that there would be no likelihood of confusion in the trade by the concurrent use of the marks of the parties. In so holding, the examiner cited the case of Pepsodent Co. v. Comfort Manufacturing Co., 83 F.2d 906, 908, 23 C.C.P.A., Patents, 1224, where it was contended by the appellee that prior registrations to third persons of marks of which the word "dent" was a part was some indication that no confusion in trade would result if it was permitted to register its mark "Pearledent" for use on dentifrices, although The Pepsodent Company was the owner of the registered trade-mark "Pepsodent" for use on dentifrices and antiseptics.

In our decision in that case, holding that the applicant (Comfort Manufacturing Co.) was not entitled to register its mark, we said, inter alia:

"We have frequently said that an applicant for the registration of a trade-mark does not strengthen his own case by pointing out a confusing similarity between trade-marks registered in the Patent Office which are not involved in an applicant's proceeding. It has always been the view of this court that an applicant's right to the registration of a mark, which implies the exclusive right to use the same, is not enlarged or changed by a consideration of confusingly similar trade-marks which have been registered in the Patent Office. Appellee's argument, in effect, amounts to a contention that since there is already confusion by reason of Patent Office registrations and extensive use of the term 'dent' in many marks, it should have the right to further add to the existing confusion. We do not think the registration statute was intended to promote such a condition as appellee, in effect, argues for."

Cases were cited in support of that statement.

In reversing the decision of the Examiner of Interferences, the commissioner, as we understand his decision, held that the

goods of the parties possess the same descriptive properties, but that, in view of the differences in the marks and the differences in the goods, confusion in trade would not be likely to result by appellant's use of its mark "Mist" on its goods and appellee's use of the mark "Koromist" on its goods.

In support of his holding, the commissioner cited the case of Puerto Rico Distilling Co. v. Coca-Cola Co., 120 F.2d 370, 28 C.C.P.A., Patents, 1143, where it was held by a majority of the court that the trade-mark "Ronricola," for use on rum, alcoholic cocktails, and beverages containing substantial portions of rum, and the trade-mark "Coca Cola," for use on a non-alcoholic beverage, were not confusingly similar in view of the differences in the marks and the differences in the goods of the parties.

We are of opinion that the decision in that case is not applicable to the issues here presented.

▮ It is clear, we think, that the goods of appellant and those of appellee possess the same descriptive properties. See Kushner & Gillman, Inc., v. Mayflower Worsted Co., 56 App.D.C. 165, 11 F.2d 462; American Woolen Company v. H. Freeman & Son, Inc., 30 U.S.P.Q. 88; In re Defender Mfg. Co., Inc., 58 App.D.C. 234, 26 F.2d 1012.

In the Kushner & Gillman case, supra, the tribunals of the Patent Office held that worsted goods in the piece (a material to be used in making men's clothing, such as coats and suits) and men's clothing were goods of the same descriptive properties. The court affirmed the commissioner's holding, and, in so doing, said:

"Where a manufacturer of worsted piece goods, which are designed to be used almost exclusively as material for men's coats and suits, adopts a trade-mark and advertises it at great expense, it is not permissible afterwards for a manufacturer of such coats and suits to adopt and use the same mark, since the identity of marks in such case would naturally lead the purchasing public to believe that the two classes of articles came from the same source, and that the coats and suits were manufactured from the goods bearing the same trade-mark. The likelihood of damage to the manufacturer of the worsteds in such a case is too obvious to require discussion."

The distinction between the facts in that case and those in the case at bar is that in the instant case, according to the stipulation, appellee's waterproof material is intended to be sold to the wholesale trade to be made up into such articles as the trade might desire, including "shower curtains, waterproof clothing and raincoats." That distinction, we think, is not of importance.

In the American Woolen Company case, supra, the commissioner held that, although the appellant's woolen piece goods had uses other than as material to be used in the making of "men's and young men's topcoats, overcoats and suits," nevertheless, woolen piece goods, on the one hand, and topcoats, overcoats, and suits, on the other, possessed the same descriptive properties.

In the case of In re Defender Mfg. Co., Inc., supra, it was held that "sheets, pillowcases, towels, and handkerchiefs, *made in part at least* of cotton textile fabric" were goods of the same descriptive properties as "cotton cloth piece goods." (Italics not quoted.)

It may be said at this point that it is not uncommon in the trade and commerce of the United States for the owner of a trade-mark for use on piece goods to permit such goods to be made up into articles of clothing and to use its trade-mark on such articles. Such was the situation in the cases of Sexton Manufacturing Co. v. Goodall Worsted Co., 40 F.2d 1017, 17 C.C.P.A., Patents, 1196, and B. B. & R. Knight v. W. L. Milner & Co., D.C., 283 F. 816. See also the case of Crown Fabrics Corporation v. American Viscose Corporation, —— F.2d ——,[1] 31 C.C.P.A., Patents ——.

It will be observed that it is recited in the quoted excerpt from the stipulation that it is the intention of appellee to sell its material to the wholesale trade to be used in making waterproof clothing and raincoats, and, although there is nothing in the evidence to indicate that appellee intends to permit the use of its trade-mark on such clothing, there is nothing to prevent it from doing so if it is the exclusive owner of such mark. Nor is there anything of record to indicate that appellee, if it desired to do so, could not, in the natural extension of its business, manufacture its waterproof material into waterproof clothing and raincoats and sell the same under its trade-mark. Furthermore, appellee has appropriated appellant's entire mark "Mist."

---

[1] Rehearing pending.

We are of opinion that the marks of the parties are confusingly similar. See Lever Brothers Co. v. Sitroux Co., 109 F. 2d 445, 27 C.C.P.A., Patents, 858, where it was held that the goods of the parties possessed the same descriptive properties, and that as appellee had appropriated the entire mark, "Lux," of appellant, appellee's mark "Sit-Ru-Lux," for use on toilet paper, was confusingly similar with the mark "Lux," for use on toilet soap.

We hold, therefore, that the concurrent use of the marks of the parties on their goods would be likely to cause confusion in the trade and deceive purchasers.

For the reasons stated, the decision of the commissioner is reversed.

Reversed.

GARRETT, Presiding Judge, did not participate in the consideration or decision of this case.