Modified.

34 C.C.P.A. (Patents)

## VANITY FAIR MILLS, Inc. v. PEDIGREE FABRICS, Inc.

### Patent Appeals No. 5293.

Court of Customs and Patent Appeals.
April 22, 1947.

Mason, Fenwick & Lawrence, of Washington, D. C. (Edward G. Fenwick, of Washington, D. C., of counsel), for appellant.

Charles R. Allen, of Washington, D. C., for appellee.

Before GARRETT, Presiding Judge, and. BLAND, HATFIELD, JACKSON, and O'CONNELL, Associate Judges.

BLAND, Associate Judge.

The appellee, Pedigree Fabrics, Inc., hereinafter referred to as Pedigree, on October 30, 1942, applied for the registration of its trade-mark, "Pediglo," claiming continuous use since March, 1936. The application alleges that Pedigree "has adopted and used the trade-mark * * * for Piece goods of rayon yarn." The mark for which registration was sought by appellee is the said word, "Pediglo," surrounded by a small rectangular background which also includes a number of small stars.

The appellant, Vanity Fair Mills, Inc., hereinafter referred to as Vanity Fair, filed notice of opposition to the registration of the "Pediglo" trade-mark, based upon its ownership and use, since 1931, of its mark, "Pechglo," which, as registered, was for "knitted and textile underwear and hosiery for women and children—namely, vests, bloomers, knickerbockers, union suits, combination underwear, step-ins, chemises, corset covers, night gowns, pajamas, petticoats, princess slips, bandeaux, bandeaux chemises, and knitted and textile underwear for men—namely, union suits, shirts, and drawers."

Pedigree alone took testimony, while Vanity Fair relied upon its filing date, July 25, 1931.

The testimony shows that the "Pediglo" mark is used by Pedigree upon piece goods made of a "duPont" acetate yarn. The application broadly provides for its use on piece goods of rayon yarn. Vanity Fair's garments and articles of wearing apparel upon which the "Pechglo" mark is used are stated in its registration to be "knitted and textile" etc.

The record also shows that the word "Pediglo" is a coined word, alleged to have been derived from a contraction of the word "Pedigree" to which the term "glo" is added; that Pedigree does a very large business in piece goods and also in "the best in woven intimate lingerie"; that the woven, rayon, or other piece goods sold under the trade-mark "Pediglo" are, after purchase from Pedigree, made up into various garments such as blouses, dresses, negligees, men's apparel, infants' wear and numerous other items; and that Pedigree has a number of so-called "Pedi" trade-marks used on different kinds of "Pedigree fabrics" such as "Pedicrepe," "Pedicrest," "Pedicharm," and "Pediswish."

The Examiner of Trade-Mark Interferences, among other things, held that the goods of the respective parties were of the same descriptive properties, that Vanity Fair was senior in use of its "Pechglo" mark, and that "the resemblances between the marks of the parties greatly predominate over the differences and are such that their concurrent use upon goods of the kind specified would be likely to cause confusion in trade and deception of purchasers." He sustained the opposition.

First Assistant Commissioner of Patents Leslie Frazer reversed the holding of the examiner of interferences, and from the commissioner's decision (66 U.S.P.Q. 486) Vanity Fair appeals here.

There is but one question presented here and that relates to the similarity of the marks and the goods and the likelihood of confusion.

■ No great array of authorities need be cited here to the effect that it is well-settled trade-mark law that not only are fabric piece goods which are afterwards made up into garments of the same descriptive properties as fabric garments, but that, under most circumstances, confusion would grow out of the concurrent use of similar trade-marks on those two kinds of merchandise. See Rice-Stix Dry Goods Co. v. Industrial Undergarment Corporation, 152 F.2d 1011, 33 C.C.P.A., Patents, 813; Celanese Corporation of America v. E. I. DuPont De Nemours & Co., 154 F.2d 146, 33 C.C.P.A., Patents, 948.

Pedigree argues that the goods being different and the marks being dissimilar and there being no proof of confusion in six years' concurrent use of the respective marks, the conclusion that confusion might result is not warranted. It argues that its mark is a three-syllable mark while Vanity Fair's is a two-syllable one, and cites certain cases which hold, under certain circumstances, that the first part of a trade-mark consisting of more than one syllable or word is more likely to indicate origin than the last part of such trade-mark, and urges that there is little resemblance in sound or meaning between "Pedi" and "Pech."

The commissioner, in part, stated: " 'Pediglo' is a three-syllable word, while 'Pechglo' has only two syllables. The last syllable is the same in both, but otherwise they have no similarity in sound or significance, and as displayed in the application and the registration they have but slight resemblance in appearance * * *."

The term "Pech" is said to come from the French word, "pêche," meaning the fruit, peach, and is pronounced "péch" as if it were spelled "pesh."

The endings of the two trade-marks are identical, and the term "glo" is quite suggestive of the character of the goods. Each of the words begins with "Pe." "Ped" and "Pesh" have a similar sound. So in both appearance and sound the marks are similar.

While the composite "Pediglo" mark must be considered as a whole, it is obvious that that part of the mark which would indicate origin is the word "Pediglo" and that the other elements of the mark are not sufficiently conspicuous to detract from the importance of the word "Pediglo."

■ We do not look upon the question of the likelihood of confusion in this case as a close one. When the goods of the respective parties are referred to as "Pechglo" and "Pediglo" it seems to us that there can be little doubt that confusion would probably result, and if there were any doubts on the question, they should be resolved against the newcomer. As has been said often, the field is broad from which to select a trade-mark to indicate the origin in its owner without invading fields preempted by others.

As to Pedigree's contention that similarities in the beginnings of trade-marks are more important than similarities in their endings, it is sufficient to say that this depends entirely upon the character of the mark. In this connection we might consider the various "Rose" marks with reference to whiskey and many other well-known marks which need not be listed here.

The commissioner relied upon the decision of this court in the case of Puerto Rico Distilling Co. v. Coca-Cola Co., 120 F.2d 370, 28 C.C.P.A., Patents, 1143, which involved the trade-marks "Ronricola" and "Coca-Cola." We there held, by a divided court, that there was no likelihood of confusion and the commissioner's decision sustaining the opposition to the registration of the mark "Ronricola" was reversed.

■ The facts in that case are so wholly different from those in the instant case that it certainly affords no basis for the conclusion reached by the commissioner herein. We think he properly cited that case, however, as one of the many decisions of this court where the rule was stated that specific differences of goods, even though the goods were of the same general description or character, should be taken

into consideration in determining the question of confusion.

■ After taking into consideration the differences in the goods and marks of the respective parties hereto we think there is such similarity in both as to justify the conclusion that the registration applied for by Pedigree should be denied, and the commissioner's decision dismissing the opposition of Vanity Fair is reversed.

Reversed.