ORACLE CORPORATION, Plaintiff,

v.

LIGHT READING, INC. Defendant.

No. C–02–2519 EDL.

United States District Court,
N.D. California.

Nov. 25, 2002.

Dorian Daley, Rewood City, CA, James G. Gilliland, Margaret C. McHugh, Townsend & Townsend & Crew LLP, San Francisco, CA, Lauren G. Segal, Oracle Corporation, Redwood City, CA, Johanna F. Sistek, Townsend & Townsend & Crew LLP, San Franciso, CA, for Plaintiff.

Ian K. Boyd, Seth Gorman, Lawrence J. Siskind, Harvey Siskind Jacobs LLP, San Francisco, CA, for Defendant.

## OPINION AND ORDER GRANTING IN PART PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION

LAPORTE, United States Magistrate Judge.

### I. BACKGROUND

Plaintiff Oracle Corporation, maker of database software, moved for a preliminary injunction against defendant Light Reading's use of the trademarks. "OpticalOracle" and "WirelessOracle" for on-line newsletters, asserting claims for trademark infringement and dilution. Defendant opposed the motion and moved to strike the declarations of Philip Johnson and Itamar Simonson in support of plaintiff's motion. Plaintiff replied.

On November 12, 2002, this Court held a hearing on the motion and indicated its intention to issue a tailored preliminary injunction, rather than a complete ban as requested by plaintiff. On November 13, 2002, the Court ordered the parties to meet and confer and submit proposed language for the preliminary injunction to the Court in conformity with the guidance provided by the Court at the hearing. On November 19, 2002, the parties submitted proposed orders on the preliminary injunction. The Court has considered all admissible evidence and arguments.[1]

---

1. The Court denies defendant's motions to strike the declarations of Philip Johnson and Itamar Simonson. While the survey by Mr. Johnson is flawed in some respects, its use at this stage poses no danger of jury confusion. Accordingly, the Court has given the declarations as much weight as they deserve.

## II.  DISCUSSION

### A.  Trademark Infringement

■   For the reasons stated at the hearing and set forth briefly in this opinion, the Court concludes that there is sufficient likelihood of confusion, especially initial interest confusion, that a tailored preliminary injunction should issue that provides for more prominent use of the Light Reading house mark and a disclaimer of affiliation with plaintiff.  The likelihood of confusion or dilution on this record, however, is not so clear that it would support a grant of summary judgment, nor so great that it can only be addressed at the preliminary injunction stage by the complete ban on the use of "oracle" sought by plaintiff.

Assessment of the likelihood of confusion begins with the *Sleekcraft* factors: (1) strength of the mark; (2) similarity of the marks; (3) marketing channels used; (4) proximity or relatedness of the goods; (5) likelihood of expansion of the product lines; (6) type of goods and the degree of care likely to be exercised by the purchaser; (7) evidence of actual confusion; and (8) defendant's intent in selecting the mark.  *AMF Inc. v. Sleekcraft Boats,* 599 F.2d 341, 348–49 (9th Cir.1979).  "In the context of the Web, the three most important *Sleekcraft* factors in evaluating a likelihood of confusion are (1) the similarity of the marks, (2) the relatedness of the goods or services, and (3) the parties' simultaneous use of the Web as a marketing channel."  *Interstellar Starship Services, Ltd. v. Epix, Inc.,* 304 F.3d 936, 942 (9th Cir.2002).

### 1.  Strength of the Mark

■   Oracle is a strong mark.  As a suggestive mark based on the ancient Greek teller of truths or predictions, it is not as inherently strong as fanciful marks, but it is stronger than merely descriptive marks.  However, extensive advertising, coupled with incontestable status, has made the Oracle mark very strong and well-known.  While it has not achieved the universal fame of a Coca–Cola in every type of household, wired or unwired, rich or poor, highly educated or not, it is nonetheless an extremely prominent brand within the general world of business, finance and technology, not just within the computer software or high technology industry.  BusinessWeek magazine ranks the Oracle brand the 23rd most valuable in the world.  (Gosse Dec. Ex. A.) While this ranking does not value household fame, but rather future earnings, it does indicate a high degree of familiarity within the business community.  (Gosse Dec. Ex. A.)

Unlike "Dr. Suess," however, "Oracle" is not a unique identifier whose use by another is almost certain to cause confusion, especially in the Internet context.  *Cf. Interstellar Starship Services, Ltd. v. Epix, Inc.,* 304 F.3d 936, 943–44 (9th Cir.2002) (explaining that "[m]arks of renown, like DR. SEUSS, describe the source of only one company's products and thus actionable initial interest confusion results from even unrelated uses of the mark.")  Oracle wisely acknowledges that many uses of "Oracle," such as to describe a website promoting fortune telling services, would not infringe its trademark.

### 2.  Similarity of the Marks

The parties' trademarks are rather similar, but not identical.  While both incorporate the word "oracle," OpticalOracle precedes it with another word containing three syllables and WirelessOracle with another word containing two syllables that sound quite different.  Yet these additional words are descriptive and thus weaker than the more famous, suggestive term Oracle.  As used in the website banners, the words "Optical" and "Wireless" on the one hand, and "Oracle" on the other, are equally prominent in size and distin-

guished by different colors, though the color scheme in "OpticalOracle" tends to highlight "Optical" whereas the color scheme in "WirelessOracle" tends to highlight "Oracle." *Cf. Thane International, Inc. v. Trek Bicycle Corp.*, 305 F.3d 894, 903 (9th Cir.2002) (holding that a reasonable jury could find either way on whether OrbiTrek and Trek marks were confusingly similar); *Entrepreneur Media, Inc. v. Smith*, 279 F.3d 1135, 1145 (9th Cir.2002) (holding summary judgment was appropriate against the use of "Entrepreneur Illustrated" on the cover of a magazine in favor of the trademark owner of "Entrepreneur" magazine, where "Illustrated" was only half the size of "Entrepreneur" and obscured by artwork, rendering the appearance of the marks virtually identical, coupled with evidence that defendant adopted the name for the purpose of free-riding on plaintiff's better known trademark).

In terms of access to plaintiff's and defendant's websites, although a quick guess or a search engine may initially lead to defendant's site when plaintiff's was desired, consumers are aware that even slight differences in the domain name may demarcate unrelated websites. *Entrepreneur Media*, 279 F.3d at 1146–47. Furthermore, consumers know that if they land on the wrong site, the correct one is often just one click away. In the words of *Interstellar Starship*, it is "largely irrelevant what results when a given term is put into a search engine." 304 F.3d at 945.

### 3. Marketing Channels Used

Light Reading markets its OpticalOracle and WirelessOracle products solely on the Internet via its websites and mass e-mails, without any sales force. While Oracle also markets its products through its websites, they are merely an adjunct to its main marketing efforts, including a large sales force and traditional non-web advertising.

### 4. Relatedness of the Goods or Services

The products are different, albeit related. Oracle sells software, primarily database software, including some wireless technology. As a small part of its large marketing effort, Oracle offers a number of free publications, and sponsors websites that provide free links to research and analysis of high technology products and industries, including wireless technology. Light Reading, by contrast, sells a paid subscription news and research service for those in the high technology and investment communities. Its electronic newsletter OpticalOracle concentrates on developments in the fiber optic networking industry, while its electronic newsletter WirelessOracle concentrates on the wireless industry.

While Oracle publishes free content via its websites and magazines, it does so as part of the overall marketing of its very expensive software products, costing up to millions of dollars. (Gorman Dec. Ex. 16 at 124:18–22.) Light Reading obtains its revenue by selling subscriptions to its publications at $1250 per year or more. Although the products are not closely related, there is less proximity required for stronger marks than for weaker ones. *Entrepreneur Media*, 279 F.3d at 1148.

### 5. Likelihood of Expansion of the Product Lines

Oracle does not claim to have actual future plans for entering the paid subscription market. Instead, it argues that consumers might think that it has done so upon viewing Light Reading's site, knowing that companies like Oracle often diversify into different but related areas.

### 6. Types of Goods and Purchaser Care

The customer bases may overlap, in that those in the high technology and financial

industries may potentially purchase both plaintiff's and defendant's products. Yet Oracle's customer base is much broader because all types of businesses use its software.[2] Both parties' consumers are likely sophisticated and likely exercise considerable care when making such expensive purchases, which normally would cut against the likelihood of confusion. However, the sophistication may cut the other way, especially in the context of initial interest confusion, as savvy business people know that companies like Oracle often seek to diversify into related areas. For example, a presumably very sophisticated Oracle customer who works in wireless telecommunications initially thought WirelessOracle was affiliated with Oracle Corporation upon receiving an e-mail from Light Reading, though after further review she realized her mistake. (Mikity Dec. ¶ 4.)

### 7. Evidence of Actual Confusion

Oracle has advanced evidence that at least two individuals were initially confused upon receiving defendant's unsolicited e-mail, although they realized they were mistaken before purchasing defendant's goods. (Mikity Dec. ¶ 4; Lahey Dec. ¶ 15.) Plaintiff's survey, though flawed in some respects, suggests that business people in the high technology industry are so familiar with the word "Oracle" in association with plaintiff that they tend to think of the Oracle company as the likely sponsor of a website using the word "Oracle," absent any other context. (Johnson Report ¶ 16.)

### 8. Defendant's Intent

While defendant knew of Oracle Corporation and its trademarks before choosing to name the newsletters similarly, defendant points out that its founder was steeped in the classics and hence partial to the name. While defendant at a minimum took a considerable risk in naming its newsletters as it did and may well have realized the possibility of attracting at least initial interest to its websites due to plaintiff's fame, the Court declines to draw an inference of an intent to free ride at this stage without more evidence.

### 9. Likelihood of Infringement

Oracle is a strong mark, the marks are sufficiently similar, the goods and services are sufficiently related, and both parties use the Web to promote their products, while the other factors are either neutral or weigh in Oracle's favor, combining to create a probable likelihood of confusion. The Court thus concludes that Oracle is likely to prevail, especially on the theory of initial interest confusion. However, the likelihood of prevailing on trademark infringement is far from a certainty. Indeed, a reasonable jury could well find to the contrary.

### B. Dilution

Oracle's likelihood of prevailing on a dilution theory is less evident. As noted above, while Oracle is a very well known brand, and not only in the niche of database software, it is not an arbitrary, universal household word like "CocaCola" or "Kodak." Moreover, dilution requires virtual identity of the marks, not just similarity. A reasonable jury could readily find either way. Cf. *Thane International*, 305 F.3d at 905.

---

**2.** Although Oracle obtained the right to compare the customer lists through a third party clearinghouse (September 27, 2002 Order on Plaintiff's Motion to Compel/For Protective Order), it chose not to do so. Thus, the degree of overlap is unknown and may in fact be small or non-existent.

## III. · CONCLUSION

The Court concludes that a complete ban on defendant's use of "OpticalOracle" or "WirelessOracle" is neither justified nor necessary to avoid confusion pending trial. Defendant has put forward evidence that a complete ban might· put the two newsletters marketed under these marks out of business, and ·would result in employee layoffs. The consequences could well be irreversible, even though it is quite possible that defendant will prevail at trial. A more tailored injunction requiring defendant to make clear that the websites and associated advertising are Light Reading products that are not affiliated with Oracle, will minimize any likelihood of confusion pending trial, without such extreme consequences to defendant.· The Ninth Circuit has taken a nuanced approach to disclaimers as a remedy· for trademark infringement, examining the specific facts such as the size and placement of the disclaimer, and approving the use of disclaimers in injunctions in appropriate circumstances. *Adray v. Adray–Mart,* 76 F.3d 984, 990–91 n. 7 (9th Cir.1995) ("Although some studies have suggested that disclaimers have little or no effect in preventing consumer confusion, *see Home Box Office, Inc. v. Showtime/The Movie Channel,* 832 F.2d 1311, 1315–16 (2nd Cir. 1987) (reviewing literature), we have approved their use in. a variety of circumstances.") For example, the *Sleekcraft* court required the defendant's house mark to appear in all of its advertisements, signs, and promotional materials to. alleviate the potential for confusion. *AMF Inc. v. Sleekcraft Boats,* 599 F.2d at 355.

Accordingly, IT IS HEREBY ORDERED that plaintiff's motion for preliminary injunction is GRANTED in part, as follows.

Light Reading is enjoined from using WirelessOracle or OpticalOracle as a trademark in any of its publications, products or services, except as provided herein:

1. Light Reading must use the Light Reading house mark on the home Web page of the WirelessOracle and OpticalOracle websites. The word "Light" in the house mark must be shown in a font size that is as large as the size of the font used for the words WirelessOracle or OpticalOracle, and the house mark must be as wide as the word "Oracle" in "WirelessOracle" or "OpticalOracle." The house mark must appear immediately preceding or immediately above or below the words WirelessOracle or OpticalOracle in the website banners.

2. The color of WirelessOracle and OpticalOracle in the banners shall be uniform such that the word "Oracle" will not be more prominent than the words "Wireless" or "Optical."

3. Light Reading must use the disclaimer, "Light Reading is not affiliated with Oracle Corporation" as follows: (1) at or near the beginning of the WirelessOracle and OpticalOptical World Wide Web home pages, and on the Light Reading and Unstrung home pages next to the words "WirelessOracle" and "OpticalOracle"; (2) on the first page of any Light Reading Web pages that do not contain the disclaimer and are linked to other sites in such a way as to allow a visitor to skip the home. page; (3) on the first page of the text of any advertisements, including e-mail advertisements and written advertising material; and (4) on the first page of all monthly reports and other products or services published under the WirelessOracle or OpticalOracle mark.. Such disclaimer must be at least as prominent as the main text of the Web page, advertisement or report. Nothing in this order precludes defendant from adding to the disclaimer a further truthful statement disassociating

itself from other hardware, software, or high technology companies.

4. Light Reading is enjoined from using the capitalized word Oracle alone, unless it is capitalized solely because it is the first word of a sentence, including as a sole user identifier in the e-mail address of Oracle@OpticalOracle.com, Oracle@Wireless-Oracle.com, and Oracle@LightReading.com.

5. Light Reading is enjoined from adopting, using, or seeking to register with the U.S. Patent and Trademark Office or any domain name registrar, any additional marks, titles or domain names incorporating the word Oracle.

The preliminary injunction is effective upon the Court's receipt of a bond from the plaintiff in the amount of $50,000 and shall continue until such time as the Court enters judgment in this case.

IT IS SO ORDERED.