**WORLD MARKET CENTER VENTURE, LLC,**
Plaintiff,

v.

**Michael RITZ, an individual,**
**Defendant.**

**No. 2:08–CV–1747–RLH–PAL.**

United States District Court,
D. Nevada.

Feb. 4, 2009.

Ronald D. Green, Jr., Laraine M.I. Burrell, Lauri S. Thompson, Mark G. Tratos, Greenberg Traurig LLP, Las Vegas, NV, for Plaintiff.

## ORDER

(Motion for Preliminary Injunction—# 3)

ROGER L. HUNT, Chief Judge.

Before the Court is Plaintiff World Market Center Venture's **Motion for Preliminary Injunction** (# 3, filed December 12, 2008). The Court previously denied an Application for Temporary Restraining Order (# 2) (*See* dkt. # 7, Order). A hearing was set on the Motion for Preliminary Injunction. However, upon the filing of a Notice of Non–Opposition to the Motion, the hearing was cancelled.

Local Rule 7–2(d) provides that failure to file points and authorities in opposition to a motion constitutes a consent that the motion be granted. *Abbott v. United Venture Capital, Inc.,* 718 F.Supp. 828, 831 (D.Nev.1989). Ordinarily the rule would provide justification to grant the Motion. However, the Court is not inclined to invoke the Local Rule in this case where the merits of the Motion fail to justify its intent. Notwithstanding the Local Rule, the Motion will be denied.

## BACKGROUND

The Plaintiff, World Market Center Venture, LLC, owns and operates World Market Center Las Vegas (WMCLV), a home and hospitality contract furnishings showcase and Trade Show Pavilion which appears to be well on its way to becoming the largest wholesale trade show complex in the world. It provides showrooms and trade shows exclusively to wholesale customers who purchase home and hospitality furnishings, and items of home decor and interior design. It owns the mark, WORLD MARKET CENTER LAS VEGAS, and purports to own—or has pending applications for—federal registrations of terms its claims are "variants" to its WORLD MARKET CENTER LAS VEGAS marks. Most of those listed include the words "furniture market" or "design center" or are simply the initials "WMC."

However, the name in question is simply, "Las Vegas Market." The Court is only told that it may be the subject of a pending application for registration. The Court is not told when the application was made, nor the status of the application. Plaintiff acknowledges the Defendant registered the internet domain name <marketlasvegas.com> on or about May 2, 2002, but claims that it is a confusingly similar variation of Plaintiffs distinctive WMCLV trademarks, It avoids telling the Court

when it applied for the registration of the words, "LAS VEGAS MARKET."

Plaintiff also notes that Defendant uses his domain name, <marketlasvegas.com>, to provide links to Las Vegas hotel accommodations. Plaintiff claims it intends to expand into the Las Vegas real estate services market and also become involved in arranging accommodations for those who attend its trade shows. However, it does not claim that it has ever been involved in such activities or when it might begin to do so.

Plaintiff has established a domain name <lasvegasmarket.com> to promote its interior furnishings market and now wants to force acquisition of Defendant's domain name. However, its Motion does not claim an infringement on its domain name, nor that the Defendant's domain name is confusingly similar to its domain name. Rather, it claims it infringes on its mark "Las Vegas Market." According to the United States Patent and Trademark Office website, Plaintiff's "Las Vegas Market" mark was not applied for until April 24, 2004. The registration was not granted until July 10, 2007, long after Defendant registered his domain name. Apparently, having found Defendant had beaten it to the punch, Plaintiff now wants to force Defendant to relinquish the domain name to it by resorting to expensive litigation with the claim that it has the exclusive rights to the phrase, Las Vegas Market. This may be what some characterize as reverse cyberpiracy.

The Court concludes that the words or phrase, "Las Vegas Market," are generic and purely descriptive in the most basic sense, and not subject to trademark or service mark protection. Neither party can preclude the other, or anyone else for that matter, from using these words or this phrase. The word "market" is purely generic. "Las Vegas" is descriptive of the location of the market. To permit a single party to claim ownership to such a phrase would be against the public interest and deny others their legitimate right to describe their business or activities.

## LEGAL STANDARDS

An injunction is an extraordinary remedy not to be lightly issued. *Hubbard Bus. Plaza v. Lincoln Liberty Life Ins. Co.,* 649 F.Supp. 1310, 1317 (D.Nev.1986). "The traditional equitable criteria for granting preliminary injunctive relief are (1) a strong likelihood of success on the merits, (2) the possibility of irreparable injury to plaintiff if the preliminary relief is not granted, (3) a balance of hardships favoring the plaintiff, and (4) advancement of the public interest (in certain cases)." *Dollar Rent A Car of Wash., Inc. v. Travelers Indem. Co.,* 774 F.2d 1371, 1374 (9th Cir.1985). "[T]he moving party may meet its burden by demonstrating either (1) a combination of probable success on the merits and the possibility of irreparable injury or (2) that serious questions are raised and the balance of hardships tips sharply in its favor." *Los Angeles Mem'l Coliseum Com'n v. Nat'l Football League,* 634 F.2d 1197, 1201 (9th Cir.1980). "These are not separate tests, but the outer reaches of a single continuum." *Dollar,* 774 F.2d at 1375.

To succeed on the merits of trademark infringement claims under the Lanham Act, Plaintiff must establish that Defendant's use of Plaintiff's marks causes a likelihood of confusion among the consuming public. *See* 15 U.S.C. § 1114(1)(a). Generally, the likelihood of confusion between two marks is determined through the application of an eight-factor test, although not all factors must be considered. *AMF Inc. v. Sleekcraft Boats,* 599 F.2d 341, 348–49 (9th Cir.1979), abrogated in part on other grounds by *Mattel, Inc. v. Walking Mountain Prod.,* 353 F.3d 792

(9th Cir.2003), Those factors are: (1) strength of the mark; (2) proximity of the goods; (3) similarity of the marks; (4) evidence of actual confusion; (5) marketing channels used; (6) type of goods and the degree of care likely to be exercised by the purchaser; (7) defendant's intent in selecting the mark; and (8) likelihood of expansion of the product lines. *Id.*

Plaintiff would have the Court only consider (1) the similarity of the marks; (2) the relatedness of the goods and services; and (3) the simultaneous use of the Web as the marketing channel. Although not all factors must be considered, Plaintiffs selective use of the factors is insufficient.

*Generic* terms may never attain trademark protection, whereas a *descriptive* term may become registrable if a secondary meaning is established through use, which shows that the significance of the term or phrase in the minds of the consuming public is not the product, but the producer. Lanham Trade–Mark Act, § 14(c), 15(4), 2(f), 15 U.S.C. § 1064(3), 1065(4), 1052(f); *In re K–T Zoe Furniture*, 16 F.3d 390, 393 (Fed.Cir.1994).

"[A] generic term, such as 'car' or pizza,' is one that does not have capacity as a source-identifier because it designates the class or 'genus' of goods" (citations deleted), ... *Boston Duck Tours, LP v. Super Duck Tours, LLC*, 531 F.3d 1, 13–14 (1st Cir.2008).

■ "Because they serve primarily to describe products rather than identify their sources, generic terms are incapable of becoming trademarks, at least in connection with the products that they designate. *See Park 'N Fly, Inc. v. Dollar Park & Fly, Inc.*, 469 U.S. 189, 193–94, 105 S.Ct. 658, 83 L.Ed.2d 582 (1985)." *Id.* at 14. "Awarding trademark rights to any user of the term, especially the first user, would harm competitors and consumers alike. Competitors unable to use a common term that describes or designates their product are at a significant disadvantage communicating to potential customers the nature and characteristics of the product." *Id.* It is for this reason that the law does not give any party exclusive rights to use general terms or phrases as trademarks.

## DISCUSSION

■ Plaintiff argues at length that Defendant's use of the term, "marketlasvegas" is likely to mislead the public into believing that he is somehow authorized by or affiliated with Plaintiff or Plaintiff's showroom and convention center. Plaintiff seeks an order requiring Defendant to transfer to it the alleged infringing domain name to avoid irreparable injury it alleges would result.

Plaintiff cites extensively to cases in which an infringer has taken a trademark and merely changed, deleted, or added one letter in an effort to avoid a claim of infringement. The Court has no argument with the cases or the law in that regard. But this is not one of those cases.

There is no evidence of any confusion among the public or consumers. It is inconceivable that anyone would confuse the domain name <marketlasvegas.com>, which has links to Las Vegas hotels, with Plaintiff's trademarks, "Las Vegas Market" or "World Market Center Las Vegas," which showcases home and hospitality furnishings to wholesalers.

■ There is evidence that Defendant's registration of his domain name and his use thereof preceded Plaintiff's efforts to register its name. It is also clear that Plaintiff only has an *anticipation* of using the name for ventures outside the scope of its present business.

Furthermore, "marketlasvegas" is not confusingly similar to Plaintiff's distinctive WMCLV trademarks. There is no likeli-

hood that its use will cause mark dilution. There is no evidence of bad faith on the part of Defendant. There is no likelihood of confusion. The marks are neither identical nor "extremely similar," although the domain names are merely reversed. No presumption of confusion arises in this instance.

Plaintiff has not shown (1) it will suffer irreparable harm if injunctive relief is not granted; (2) that it is likely to succeed on the merits; (3) that the balance of equities (or hardship) tips in its favor; and, in this instance, (4) that granting Plaintiff an injunction is in the public interest, as required by *Stanley v. University of Southern California,* 13 F.3d 1313, 1319 (9th Cir.1994) and *Dollar Rent A Car of Wash., Inc. v. Travelers Indemnity, Co.,* 774 F.2d 1371, 1374 (9th Cir.1985). Indeed, for the reasons described herein, granting Plaintiff an injunction is contrary to the public's interest. None of the factors described in 15 U.S.C. § 1125(d)(1)(B), which deals with cybersquatting are met here.

In denying Plaintiff's request for a preliminary injunction, this Court does not mean to imply that Defendant has a right to register "marketlasvegas," or any derivation thereof, as a trademark. But neither does Plaintiff have that right. Market, Las Vegas, or any combination of those words, are generic and cannot be exclusively used by anyone. This is not to suggest that stylized versions of those words cannot be made into legitimate marks when used in a particular trade, industry, business, or domain name. But the simple words themselves cannot be used by one to the exclusion of the rest of the world.

## CONCLUSION

IT IS THEREFORE ORDERED that Plaintiff World Market Center Venture's

Motion for Preliminary Injunction (# 3) is DENIED.